*By order of the Bankruptcy Appellate Panel, the precedential effect*
*of this decision is limited to the case and parties pursuant to 6th*
*Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

### File Name: 12b0003n.06

## BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re:  CARY ROSSI,<br>         DANA ROSSI,<br><br>         Debtors.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>) | |
| CARY ROSSI,<br>DANA ROSSI,<br><br>         Appellants,<br><br>         v.<br><br>JAMES WESTENHOEFER,<br>CHAPTER 7 TRUSTEE,<br><br>         Appellee.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 11-8048 |

Appeal from the United States Bankruptcy Court
for the Eastern District of Kentucky
Bankruptcy Case No. 09-61828

Decided and Filed:  March 20, 2012

Before:  FULTON, HARRIS, and PRESTON, Bankruptcy Appellate Panel Judges.

_____

### COUNSEL

**ON BRIEF:** Marcia A. Smith, Corbin, Kentucky, for Appellants.  Ryan R. Atkinson, Lexington,
Kentucky, Heather M. McCollum, QUINTAIROS, PRIETO, WOOD & BOYER, P.A.,
Lexington, Kentucky, for Appellee.

---

## OPINION

---

THOMAS H. FULTON, Appellate Panel Judge. Debtors Cary and Dana Rossi (the "Debtors") appeal the bankruptcy court's May 24, 2011 order that (a) sustained the Chapter 7 trustee's objection to the Debtors' amended claim of exemptions filed February 28, 2011, which reflected a higher valuation of certain property destroyed in a fire; (b) denied the Debtors' motion to convert the Chapter 7 trustee's objection into an adversary proceeding and consolidate it with an adversary proceeding brought by the U.S. Trustee to revoke the Debtors' discharge for fraud with respect to the valuation of that property; and (c) denied the Debtors' motion to continue to employ counsel to represent them in state court litigation against their insurer with respect to that property. The Debtors also appeal the bankruptcy court's July 1, 2011 order denying the Debtors' motion to alter, amend or vacate the May 24, 2011 order.

## ISSUES ON APPEAL

The Debtors raise three issues on appeal:

1.  Did the initial Chapter 7 trustee irrevocably abandon the insurance claims when he filed his second Report of No Distribution and closed the bankruptcy case?

2.  Does "the law of the case" doctrine preclude the bankruptcy court from determining that the contract claims in the Debtors' litigation with their insurer remain property of the Debtors' estate given the bankruptcy court's remand of that litigation to state court?

3.  Did the bankruptcy court err in applying equitable and judicial estoppel to deny the Debtors' motion to amend their exemptions?

2

## JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit (the "BAP") has jurisdiction to decide this appeal. The United States District Court for the Eastern District of Kentucky has authorized appeals to the BAP.

For purposes of appeal, an order is final if it "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497, (1989) (citations omitted). "The concept of finality applied to appeals in bankruptcy is broader and more flexible than the concept applied in ordinary civil litigation." *Millers Cove Energy Co. v. Moore (In re Millers Cove Energy Co.)*, 128 F.3d 449, 451 (6th Cir. 1997). The finality requirement is considered "in a more pragmatic and less technical way in bankruptcy cases than in other situations. . . . In bankruptcy cases, a functional and practical application [of Section 158] is to be the rule." *In re Dow Corning Corp.*, 86 F.3d 482, 488 (6th Cir. 1996) (citations and internal quotation marks omitted). In bankruptcy cases, an order that finally disposes of discrete disputes within a larger case may be appealed immediately. *Id.* This relaxed rule avoids the "waste of time and resources that might result from reviewing discrete portions of the action only after a plan of reorganization is approved." *In re Veltri Metal Products, Inc.*, 189 F. App'x 385 (6th Cir. 2006) (unpub.) (citing *In re Dow Corning Corp.*, 86 F.3d at 488).

That the bankruptcy court disposed of three separate motions in the May 24 Order (as hereinafter defined) and the July 1 Order (as hereinafter defined) somewhat complicates the analysis of whether those orders are final and appealable. An order disposing of an objection to a claimed exemption is final and appealable, so the orders are final with respect to the Exemption Objection (as hereinafter defined). *See Menninger v. Schramm (In re Schramm)*, 2010 WL 24895991 (B.A.P. 6th Cir. 2010); *Lebovitz v. Hagemeyer (In re Lebovitz)*, 360 B.R. 612 (B.A.P. 6th Cir. 2007). The Debtors do not appeal the portion of the May 24 Order that denied the Consolidation Motion (as hereinafter defined) because their request for relief only asks that the Exemption Objection be overruled and that the Continued Employment Motion (as hereinafter defined) be granted. Although

3

the Continued Employment Motion is couched in terms of seeking permission to continue to retain counsel[1], it is fundamentally a request that the bankruptcy court determine whether the Insurance Litigation (as hereinafter defined) constitutes property of the estate. In this regard, the May 24 and July 1 Orders' resolution of the Continued Employment Motion is more akin to a denial of exemption than a denial of employment and, therefore, should be considered final and appealable.[2]

With the exception of the issue of equitable estoppel, the issues raised in this appeal are issues of law and, therefore, are to be reviewed *de novo*. *See Deutsche Bank Nat. Trust Co. v. Tucker*, 621 F.3d 460 (6th Cir. 2010) (statutory interpretation and application reviewed *de novo*); *Universal Guar. Life Ins. v. Coughlin*, 481 F.3d 458 (7th Cir. 2007) (application of the law of the case doctrine reviewed *de novo*); and *Eubanks v. CBSK Financial Group, Inc.*, 385 F.3d 894 (6th Cir. 2004) (application of judicial estoppel reviewed *de novo*). "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders* (*In re Morgeson*), 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007). Essentially, the reviewing court decides the issue "as if it had not been heard before." *Mktg. & Creative Solutions, Inc. v. Scripps Howard Broad. Co.* (*In re Mktg. & Creative Solutions, Inc.*), 338 B.R. 300, 302 (B.A.P. 6th Cir. 2006) (citation omitted). "No deference is given to the trial court's conclusions of law." *Id.* (citations omitted).

Equitable estoppel involves mixed questions of law and fact. *See Noonan v. Secretary of Health & Human Servs.* (*In re Ludlow Hosp. Soc'y, Inc.*), 124 F.3d 22 (1st Cir. 1997). In the Sixth

---

[1] Orders denying employment of counsel are non-final orders. *See Official Committee of Unsecured Creditors v. Anderson Senior Living Prop., LLC* (*In re Nashville Senior Living, LLC*), 426 B.R. 240 (B.A.P. 6th Cir. 2010).

[2] Even if interlocutory, given the circumstances of this case, the issue would seem a strong candidate for discretionary review under 28 U.S.C. § 158(a)(3) as it does appear to involve "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of litigation." *Cardwell v. Chesapeake & Ohio Ry. Co.*, 504 F.2d 444, 446 (6th Cir. 1974); *see also Wicheff v. Baumgart* (*In re Wicheff*), 215 B.R. 839, 844 (B.A.P. 6th Cir. 1998).

4

Circuit, mixed questions of law and fact are to be reviewed *de novo*. *See Adbur'Rahman v. Colson*, 649 F.3d 468, 472 (6th Cir. 2011).

## FACTS

The Debtors filed their Chapter 7 petition on November 9, 2009, which, among other things, listed a $2,000 value for "household goods and furnishings" and a $200 value for "wearing apparel" in Schedule B.  In their Schedule C, the Debtors claimed exemptions for the entire value of the household goods and furnishings and the wearing apparel under 11 U.S.C. § 522(d)(3).  Their Chapter 7 trustee at the time, Maxie E. Higgason ("Mr. Higgason"), held the 341 meeting on January 7, 2010, and filed a Report of No Distribution on the same day.

On January 19, 2010, a fire destroyed the Debtors' home and all of its contents.  The Debtors filed a claim with the insurer of their home, Auto Owners Insurance ("AOI"), seeking, among other things, $45,924.88 for household goods and furnishings, wearing apparel, medical equipment and living expenses.[3]  At some point thereafter, a representative of AOI discussed the Debtors' insurance claim with Mr. Higgason and offered to send him a check for $22,000.00 with respect to the Debtors' claim for personal property.  Mr. Higgason declined the check, apparently believing that the money was encumbered and/or exemptible.  On February 24, 2010, Mr. Higgason filed a second Report of No Distribution.  The case was closed on March 30, 2010.

On May 27, 2010, the Debtors filed suit in Whitley County, Kentucky, Circuit Court ("Whitley Circuit Court"), Case No. 10-CI-00420, against AOI and AOI's agent, Allen Jarvis ("Mr. Jarvis") (Mr. Jarvis and AOI collectively referred to herein as the "Insurance Defendants"), over AOI's failure to pay the Debtors' mortgage in full and failure to pay the Debtors the approximately $46,000 that they believe they are entitled to for the replacement of the contents of their home and other damages.  On June 28, 2010, the Insurance Defendants filed a notice of removal of the suit to

---

[3]This included $237.50 for rent, $8,470.00 for property of their daughter and $3,120.00 for property stolen after the fire.

5

bankruptcy court, which initiated the adversary proceeding referred to above as the Insurance Litigation. On July 26, 2010, the Debtors filed a motion to remand (the "Remand Motion") the Insurance Litigation back to state court under 28 U.S.C. § 1447(c), arguing that either their claims against the Insurance Defendants were not assets of their bankruptcy estate or the funds payable to them with respect to household goods and furnishings could be completely exempted. The Insurance Defendants objected to the Remand Motion by arguing that the insurance proceeds were property of the estate and that the Debtors should be estopped from asserting a higher value in their insurance claim than had been asserted in their bankruptcy petition and schedules and exempting the same.

The bankruptcy court held a hearing on the Remand Motion on August 18, 2010, at which Mr. Higgason discussed his dealings with AOI regarding the Debtors' insurance claims and his belief that the insurance proceeds would have been encumbered and/or exemptible. On August 26, 2010, the bankruptcy court granted the Remand Motion without stating the grounds. The Insurance Defendants appealed the remand order to the Sixth Circuit Bankruptcy Appellate Panel ("BAP"), Case No. 10-8068 (the "First BAP Appeal"), which dismissed the appeal for lack of jurisdiction on February 15, 2011. *In re Rossi*, 444 B.R. 170, 173 (B.A.P. 6th Cir. 2011). The BAP concluded:

> It appears that the court remanded the case pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction; however, whether the court was correct in determining that it lacked subject matter jurisdiction is irrelevant. Either way, 28 U.S.C. § 1447(d) and the Supreme Court's holding in *Things Remembered[, Inc. v. Petrarca,* 516 U.S. 124, 116 S. Ct. 494 (1995)], bar us from reviewing the bankruptcy court's decision to remand the case.

*Id.* The Insurance Litigation is currently being held in abeyance by the Whitley Circuit Court pending resolution of the instant BAP appeal.

While the First BAP Appeal was pending, on November 16, 2010, the U.S. Trustee filed an adversary proceeding, AP No. 10-6045 (the "UST AP"), against the Debtors seeking to revoke their discharge under 11 U.S.C. § 727(d)(1) on grounds that they had undervalued their household goods

on Schedule B. The Debtors moved for summary judgment, which the bankruptcy court denied on January 26, 2011, concluding that "the issue of whether the Defendants had an intent to defraud pursuant to 11 U.S.C. § 727(d)(1) is a genuine issue of material fact that may not be resolved by summary judgment." (UST AP, Order entered January 26, 2011.) On February 16, 2011, by agreement of the parties, the bankruptcy court entered an order holding the UST AP in abeyance pending resolution of the Insurance Litigation by the Whitley Circuit Court. On February 16, 2011, Mr. Higgason resigned as Chapter 7 trustee and was replaced by James R. Westenhoefer ("Mr. Westenhoefer").

On February 28, 2011, the Debtors filed amendments to Schedules A, B, and C, among other things increasing the value of household goods and furnishings and wearing apparel to $24,309.88, listing previously undisclosed medical items and valuing the same at $13,145.00 and claiming exemptions for all of the foregoing under 11 U.S.C. §§ 522(d)(1) and (3) (with respect to the household goods and furnishings and wearing apparel) and 11 U.S.C. § 522(d)(9) (with respect to the medical items).

On March 23, 2011, Mr. Westenhoefer filed an objection to the Debtors' amended exemptions (the "Exemption Objection"), stating that "the values and list of personal property in the original petition, as outlined some 70 days prior to the fire loss should be binding on the debtors" and that "[t]he debtors [sic] February 28, 2011 amendment (some 17 times higher value) is obviously self-serving and unduly depreciates the integrity of the bankruptcy process and should be disallowed in its entirety." On April 13, 2011, the Debtors filed a reply to the Exemption Objection and a separate motion (the "Consolidation Motion") to convert the Exemption Objection into an adversary proceeding and consolidate it with the UST AP. On April 18, 2011, the U.S. Trustee filed an objection to the Consolidation Motion, urging the bankruptcy court to determine whether the Insurance Litigation was an asset of the estate so that the UST AP could be resolved more quickly. Also on April 18, 2011, AOI filed its own objection (for ease of reference, included herein in the defined term "Exemption Objection") to the Debtors' proposed amendment to their exemptions on essentially the same grounds as Mr. Westenhoefer's objection.

7

On April 13, 2011, the Debtors also filed a motion (the "Continued Employment Motion") for an order by the bankruptcy court allowing them to continue to employ counsel in the Insurance Litigation in the Whitley Circuit Court and clarifying that only compensation awarded in such litigation for household goods and furnishings, wearing apparel and medical items owned by the Debtors as of the petition date would be property of the estate. AOI objected to the Continued Employment Motion on April 19, 2011, asserting that all causes of action arising out of their insurance policy should be property of the estate, including the Debtors' tort claims in the Insurance Litigation for bad faith.

The bankruptcy court held a combined hearing on the Exemption Objection, Consolidation Motion and Continued Employment Motion on April 20, 2011, at which Mr. Westenhoefer and the U.S. Trustee urged the court to resolve whether the Insurance Litigation was an asset of the estate. Counsel for the Debtors did not object to the court determining whether the Insurance Litigation belonged to the estate as a matter of law but did state twice that she wanted to put on more "proof on the exemption issue." (Transcript of April 20, 2011 hearing, pp. 5,14-15.) The bankruptcy court indicated that it was only considering what was property of the estate, stating that "I'm going to take all the motions that are on – that are on the docket this morning under submission with the express intent of making a determination of the property of the estate issue first, and then when we resolve that issue, one way or another, we will start to address the other issues as they present themselves." (Transcript of April 20, 2011 hearing, pp. 15-16.) Although the bankruptcy court appears to have agreed that additional proof was needed on the exemptions,[4] it did not permit the Debtors to present such proof but gave the parties one week to submit briefs on "what property at issue in the pending matters constitutes property of the bankruptcy estate." (Order entered April 20, 2011, Docket No. 47.)

---

[4]It stated as follows: "One of the things -- one of the things that may become involved in the exemption issue is -- would be testimony from the debtors with regard to what was going on when the amendment to schedule C was filed, and I don't think we had reached that point last time we went through the drill, so it's additional -- it's happened since then." (Transcript of April 20, 2011 hearing, p. 14.)

On May 24, 2011, the bankruptcy court entered an order (the "May 24 Order") resolving the Consolidation Motion, Exemption Objection and Continued Employment Motion. First, the bankruptcy court denied the Consolidation Motion, concluding that the UST AP was based on fraud and that the Exemption Objection was based on "the doctrine of estoppel." Second, the bankruptcy court sustained the Exemption Objection on grounds of equitable and judicial estoppel. Third, the bankruptcy court denied the Continued Employment Motion, concluding that the Chapter 7 trustee "is the proper party in interest to maintain the state court action to the extent the action deals with a recovery based on a breach of the insurance contract, an asset of the bankruptcy estate, and any recovery related thereto" and concluding that any claims of the Debtors sounding in post-petition torts against AOI were property of the Debtors and the Debtors did not need court approval to retain counsel to pursue those claims.

On June 1, 2011, the Debtors filed a motion to alter, amend or vacate the May 24 Order, asserting that the resolution of the First BAP Appeal in favor of the Debtors precluded the bankruptcy court from concluding that any portion of the Insurance Litigation belonged to the estate. They also asserted that equitable estoppel only applies in contract cases and that the bankruptcy court could not apply judicial estoppel without an evidentiary hearing with respect to the Debtors' conduct. They also asserted that the bankruptcy court miscalculated the difference between the Debtors' original and amended exemption amounts and improperly inferred fraud by the Debtors by looking only at such difference. The Debtors asked the bankruptcy court to overrule the Chapter 7 trustee's objection, set an evidentiary hearing concerning the Debtors' conduct, or at least clarify that their daughter's personal property is not estate property. In a supplement to their motion, the Debtors also pointed out that the insurance policy in question had never been made a part of the record and argued that Mr. Higgason had irrevocably abandoned the insurance claims when he filed his second Report of No Distribution and closed their case.

By order entered July 1, 2011 (the "July 1 Order"), the bankruptcy court denied the Debtors' motion to alter, amend or vacate. The bankruptcy court concluded that the BAP resolved the First BAP Appeal solely on the basis of 28 U.S.C. § 1447(d), which did not require the BAP to determine

9

whether the insurance proceeds were fully exempt, and, therefore, the "law of the case" doctrine did not apply. The bankruptcy court disagreed with the Debtors' assertion that equitable estoppel is limited to contract cases and concluded that judicial estoppel does not require a finding of fraud. Finally, for two reasons the bankruptcy court rejected the Debtors' argument that the insurance claims had been abandoned. First, the Debtors had not raised the argument previously, therefore it was not appropriate for a motion under Rule 59(e). Second, under 11 U.S.C. § 554(d), the claims had not been abandoned because the insurance policy from which such claims were derived had never been listed in the Debtors' schedules. The Debtors filed their notice of appeal on July 8, 2011.

## DISCUSSION

A.   Did the initial Chapter 7 trustee irrevocably abandon the insurance claims when he filed his second Report of No Distribution and closed the bankruptcy case?

The Debtors seek review of the bankruptcy court's order denying their Continued Employment Motion, in which the bankruptcy court ruled that Mr. Westenhoefer is the proper party to maintain the state court action against AOI to the extent that the action is based on breach of the insurance contract. The Debtors first assert that the Chapter 7 trustee was aware of their insurance claims when he filed the second Report of No Distribution and closed their case and that this constituted an irrevocable abandonment of the insurance claims that deprived the bankruptcy court of jurisdiction over them.

11 U.S.C. § 554 governs abandonment of property of the estate. In particular, 11 U.S.C. §§ 554(c) and (d) address situations where, as here, a Chapter 7 trustee does not expressly abandon an asset. Section 554 states in pertinent part:

> (c) Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

10

(d) Unless the court orders otherwise, property of the estate
that is not abandoned under this section and that is not administered
in the case remains property of the estate.

11 U.S.C. §§ 554(c) and (d).

The BAP has previously considered 11 U.S.C. §§ 554(c) and (d) together and noted that
"[m]any courts have held that 'when the debtor has failed to disclose an asset in accordance with
§ 521(l) of the Code and the Trustee has not otherwise administered it, the asset is not, upon the
closing of the case, deemed abandoned or administered for purposes of § 350, as it would be if the
asset were properly disclosed.'" *Cundiff v. Cundiff (In re Cundiff)*, 227 B.R. 476, 478-79 (B.A.P. 6th
Cir. 1998) (internal citations omitted); *see also In re Tennyson*, 313 B.R. 402, 405-06 (Bankr. W.D.
Ky. 2004).

"An insurance policy is generally considered property of the estate." *Unsecured Creditors
Disbursement Comm. v. Antill Pipeline Constr. Co.*, 300 F.3d 614, 618 (5th Cir. 2002) (citing
*Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 55 & n.13 (5th Cir. 1993) (internal citations
omitted) ("[C]ourts are generally in agreement that an insurance policy will be considered property
of the estate.")). Furthermore, proceeds of an insurance policy are property of the estate where "the
debtor would have a right to receive and keep those proceeds when the insurer paid on the claim."
*Edgeworth*, 993 F.2d at 55. *See also Bradt v. Woodlawn Auto Workers, F.C.U. (In re Bradt)*, 757
F.2d 512 (2nd Cir. 1985); *Ledford v. Fidelity Financial Services (In re Hill)*, 174 B.R. 949 (Bankr.
S.D. Ohio 1994).

Here, as the Debtors indicated in their motion to alter, amend or vacate the May 24 Order,
the insurance policy in question was never placed in the record and, consequently, the Panel cannot
know whether the Debtors have any right to the proceeds in question as a contractual matter. On the
other hand, the Debtors are clearly acting as if they have a right to the proceeds. Also, if the Debtors
have no contractual right to the proceeds, this appeal would be moot.

11

Assuming that the Debtors do have a right to the insurance proceeds, their claim to the same is property of the estate because the underlying insurance policy is property of the estate. Because the Debtors did not schedule the insurance policy, it could not be abandoned by operation of 11 U.S.C. § 544(c). Accordingly, the bankruptcy court correctly concluded that the insurance claims had not been abandoned by the trustee and is affirmed as to this issue.

B.    Does "the law of the case" doctrine preclude the bankruptcy court from determining that the contract claims in the Insurance Litigation remain property of the Debtors' estate, given the bankruptcy court's remand of the Insurance Litigation to state court and the First BAP Appeal?

As the second basis for review of the bankruptcy court's order denying their Continued Employment Motion, the Debtors assert that the bankruptcy court and the BAP previously concluded that the bankruptcy court did not have jurisdiction over the Insurance Litigation and that, therefore, under the doctrine of the "law of the case," the bankruptcy court could not now determine that the contract claims in the Insurance Litigation remain property of the Debtors' estate.

The "law of the case" doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). "'Issues decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case.'" *Hanover Ins. Co. v. American Engineering Co.*, 105 F.3d 306, 312 (6th Cir. 1997) (quoting *Coal Resources, Inc. v. Gulf & Western Ind.*, 865 F.2d 761, 766, *opinion amended on denial of reh'g*, 877 F.2d 5 (6th Cir. 1989) (internal citations omitted)). The "law of the case" doctrine is "directed to a court's common sense" and is not an "inexorable command." *Id.* A previous ruling that would otherwise constitute the "law of the case" can be reconsidered where: "(1) substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice." *Id.*

12

Despite the Debtors' assertions, it is not clear what is the "law of the case." The BAP dismissed the First BAP Appeal on the basis of 28 U.S.C. § 1447(d), concluding that an order remanding a case to state court from which it was removed for lack of subject matter jurisdiction is not reviewable on appeal. In dismissing the First BAP Appeal, the BAP had no occasion to decide the merits of the bankruptcy court's decision to remand the Insurance Litigation to state court. Rather, the BAP simply deduced from the transcript of the hearing on the motion to remand and from the motion itself that the decision to remand the Insurance Litigation was based on lack of subject matter jurisdiction. As the BAP noted, however: "[W]hether the court was correct in determining that it lacked subject matter jurisdiction is irrelevant. Either way, 28 U.S.C. § 1447(d) and the Supreme Court's holding in *Things Remembered* bar us from reviewing the bankruptcy court's decision to remand the case." *Rossi*, 444 B.R. at 173.

Therefore, in dismissing the First BAP Appeal, the BAP never determined whether the bankruptcy court was correct in deciding that it lacked subject matter jurisdiction over the Insurance Litigation or even why the bankruptcy court reached its decision. For example, the bankruptcy court could have determined that the insurance claims were not property of the Debtors' estate or that the insurance claims would have no impact on the Debtors' estate due to exemptions available to the Debtors. In any event, the disposition of the First BAP Appeal is not "law of the case" as to whether any or all of the insurance claims are property of the Debtors' estate. Nor is the disposition of the First BAP Appeal "law of the case" as to whether the Debtors are entitled to exempt the proceeds from any or all of the insurance claims.

Furthermore, even if the bankruptcy court believed that the Insurance Litigation would have no impact on the Debtors' estate when it granted the Debtors' motion to remand, it could have reconsidered that ruling in coming to its conclusions in the May 24 and July 1 Orders. As discussed above, a court can reconsider a prior ruling of its own that would otherwise constitute the "law of the case" where a decision "is clearly erroneous and would work manifest injustice." *Id.*

13

For the foregoing reasons, the prior decisions of the bankruptcy court and the BAP do not preclude the bankruptcy court from determining that the contract claims of the Insurance Litigation remain property of the Debtors' estate to be administered by the Chapter 7 trustee.

> C.   Did the bankruptcy court err in applying equitable and judicial estoppel to disallow the Debtors' amended claim of exemptions?

A debtor may generally amend a voluntary petition schedule as a matter of course at any time before the case is closed. Federal Rule of Bankruptcy Procedure 1009(a); *Lucius v. McLemore*, 741 F.2d 125, 127 (6th Cir. 1984). However, the bankruptcy court may refuse to allow a debtor to amend his or her exemptions where the debtor has acted in bad faith or concealed property. *Id.* "In the context of an amendment of exemptions, bad faith is determined by an examination of the totality of the circumstances. Mere allegations of bad faith will not suffice; the objecting party must demonstrate the bad faith of the debtor by specific evidence." *In re Colvin*, 288 B.R. 477, 481-82 (Bankr. E.D. Mich. 2003) (citing *Kaelin v. Bassett (In re Kaelin)*, 308 F.3d 885 (8th Cir. 2002); *Magallanes v. Williams (In re Magallanes)*, 96 B.R. 253, 255 (B.A.P. 9th Cir. 1988); *Brown v. Sachs (In re Brown)*, 56 B.R. 954, 958 (Bankr. E.D. Mich. 1986)).

1. Judicial Estoppel. "The doctrine of judicial estoppel 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). The doctrine is "'utilized in order to preserve 'the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship.'" *Id.* (quoting *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002)). "In the bankruptcy context, this court has previous [sic] noted that 'judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" *Id.* (quoting *Browning*, 283 F.3d at 775-76). "'[J]udicial estoppel is inappropriate in cases of conduct amounting to nothing more than mistake or

inadvertence.'" *Id.* (quoting *Browning*, 283 F.3d at 776). "Two circumstances in which a debtor's failure to disclose might be deemed inadvertent are: (1) 'where the debtor lacks knowledge of the factual basis of the undisclosed claims,' and (2) where the 'debtor has no motive for concealment.'" *Id.* Absence of bad faith is also a factor to consider in determining whether it was appropriate to apply judicial estoppel. *Id.*

In the May 24 Order, the bankruptcy court concluded that the Debtors should be judicially estopped from amending their exemptions, stating that "[t]he record lacks any legally viable explanation accounting for the substantial difference between the replacement value of the property provided to Auto-Owners and asserted in the state court action and the values in Debtors' original Schedule B which the Code requires must be fair market values of all a debtor's property." In the July 1 Order, the bankruptcy court concluded that "[t]here is no requirement for a finding of fraud before applying the doctrine of judicial estoppel and Debtors offer no legal authority in support of their position."

The bankruptcy court was correct in finding the record largely devoid of an explanation as to the discrepancy between the value of property listed in the original Schedule B and that claimed later by the Debtors when making the insurance claim. This, however, appears to be the result of the Debtors not being given the opportunity to present exculpatory evidence, despite their requests twice at the bankruptcy court's April 20, 2011 hearing on the Exemption Objection. Indeed, at that hearing the bankruptcy court itself indicated that further proof might be needed, at least as to "what was going on when the amendment to schedule C was filed." Considering the legal standard for judicial estoppel outlined above, the Debtors should have been given the opportunity to present evidence, if they could, showing that the initial property valuation was the result of mistake or inadvertence and that they lacked bad faith in making such valuation.

2.  Equitable Estoppel. "Estoppel is an equitable doctrine invoked to avoid injustice in particular cases." *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 59 (1984). A party claiming the estoppel "must have relied on its adversary's conduct 'in such a manner

15

as to change his position for the worse,' and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." *Id.  See also Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 557 (6th Cir. 2009).

In the May 24 Order, the bankruptcy court applied equitable estoppel because "Debtors made representations to the Court and the Chapter 7 trustee on which both relied and ultimately an order of discharge was entered for both debtors."  The bankruptcy court also believed that "[i]f Debtors succeed in amending their exemptions Debtors will collect many multiples of the value of their personal property as scheduled in this case, while their unsecured creditors will be substantially prejudiced and recover nothing in this case."

The Panel cannot conclude that the parties in question relied to their detriment on the Debtors' original schedules.  While the Debtors' case was closed by Mr. Higgason prior to the Debtors' formal attempt to amend their schedules, Mr. Higgason was clearly aware of the Debtors' insurance claims at the time.  Thus, he either did not rely on the original schedules in closing the case, or his reliance on such schedules was not reasonable given his actual knowledge.  Furthermore, the Debtors' case has been reopened, and the new Chapter 7 trustee has been given the opportunity to challenge the Debtors' proposed amendments.  Any detriment occasioned by the first Chapter 7 trustee's closing of the case has been erased.

In comparing the original and amended claim of exemptions, it appears that the parties have failed to focus on the distinction between the Debtors' insurance contract, which was an unscheduled asset of the Debtors' estate, and the personal property that was destroyed in the postpetition fire. Funds recovered for the destroyed property are proceeds of the insurance contract, not proceeds of the destroyed property listed in the Debtors' schedules.  If the Debtors' insurance policy permits a recovery based on replacement value, there is nothing inherently inconsistent in the Debtors' estate recovering more in insurance proceeds than the fair market value of the Debtors' household goods prior to their destruction in the fire. *See In re Hauffpauir*, 258 B.R. 447, 455 (Bankr. D. Idaho 2001)

16

(following evidentiary hearing, bankruptcy court allowed debtors to amend claim of exemptions to include proceeds of fire insurance policy which provided for replacement value coverage of certain personal property). As the bankruptcy court in *Hauffpauir* noted in interpreting Idaho's exemption statute, if the debtors were limited to the actual market value of the property at the time of the loss, "all replacement value insurance contracts would, at least for exemption purposes, be converted into market value policies." *Id.* at 456.

Moreover, the Debtors' failure to list their homeowners' insurance policy in their initial bankruptcy schedules may well have been a simple oversight. Most debtors do not think of a homeowners' insurance policy as an asset unless there is a pending claim. *See id.* at 454 & n.10 (rejecting trustee's argument that debtors' failure to claim initial exemption in casualty insurance policy should bar exemption in insurance proceeds as making little sense; such an "approach would encourage a speculative exemption, and force every debtor holding a casualty insurance policy to assert something in the nature of a 'contingent exemption' in the proceeds of that policy simply to cover the possibility of a post-petition loss"). Another factor that suggests that the Debtors were not trying hide the existence of their homeowner's insurance is the Debtors' original Schedule J, in which the Debtors indicated that the cost of property insurance was included in the monthly mortgage cost.[5]

The Panel also cannot conclude that the unsecured creditors "will be substantially prejudiced" merely if the Debtors succeed in amending their exemptions. There is no evidence in the record of unsecured creditors changing their position for the worse because of the initial valuation given by the Debtors. Rather, it would seem that the unsecured creditors would be getting a windfall if the Debtors were not allowed to amend their schedules to exempt the replacement value of their property.

---

[5]The Panel need not decide whether federal exemptions for household goods and other property include insurance proceeds for household goods and other property destroyed by fire. Nor must the Panel decide whether federal exemptions in insurance proceeds are capped at market value at the time of loss, even if the insurance policy provides for replacement value. Such questions are for the bankruptcy court to address in the first instance.

17

Based on the foregoing, the Panel concludes that the bankruptcy court improperly applied the doctrines of judicial estoppel and equitable estoppel. Accordingly, the bankruptcy court's May 24 and July 1 Orders are reversed and remanded with respect to this issue.

## CONCLUSION

The May 24 and July 1 Orders addressed three separate matters, the Consolidation Motion, Exemption Objection and Continued Employment Motion. The Debtors only seek review of the latter two. The bankruptcy court sustained the Exemption Objection on grounds of equitable and judicial estoppel. Because the bankruptcy court improperly applied equitable and judicial estoppel by failing to allow the Debtors to tender exculpatory evidence, the May 24 and July 1 Orders are reversed and remanded with respect to the Exemption Objection, with direction that the bankruptcy court permit the Debtors to submit evidence as to the valuation by the Debtors of their property and their intent at the relevant points in time. The remaining two issues raised on appeal by the Debtors attack the bankruptcy court's decision with respect to the Continued Employment Motion. Because the bankruptcy court properly decided those issues, it is affirmed as to the Continued Employment Motion.